UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEKKEL RICHARDS and
ADAM MALINOWSKI,

        Plaintiffs,

                                         Civil Case No. 15-12211
v.                                    Honorable Linda V. Parker

CITY OF DETROIT, DETROIT ASSISTANT
POLICE CHIEF STEVE DOLUNT,
DETROIT POLICE OFFICER GADWELL,
DETROIT POLICE OFFICER REIZIN,
DETROIT POLICE OFFICER PETROFF, and
DETROIT POLICE SGT. BRANNOCK,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This lawsuit arises from Plaintiffs' arrest on June 23, 2014, following the

City of Detroit's annual fireworks display. In an Amended Complaint filed

September 15, 2015, Plaintiffs assert the following civil rights claims against

Defendants pursuant to 42 U.S.C. § 1983:

        (I) Violation of Plaintiffs' First Amendment rights;

        (II) Retaliation against Plaintiffs in violation of the First
        Amendment;

        (III) Deprivation and destruction of Plaintiffs' personal
        property in violation of their Fifth and Fourteenth
        Amendment rights;

(IV) Excessive force and unreasonable seizure of
Plaintiffs in violation of their Fourth Amendment rights;

(V) False arrest of Plaintiff Mekkel Richards ("Mr.
Richards") in violation of his Fourth Amendment rights;

(VI) Malicious prosecution of Mr. Richards in violation
of his Fourth and Fourteenth Amendment rights;

(VII) Civil conspiracy to violate Plaintiffs' rights; and

(VIII) Municipal liability.[1]

(ECF No. 5.) Plaintiffs also assert the following claims against Defendants under

Michigan law: (IX) assault and battery; (XI)[2] false imprisonment; (XII) common

law and statutory malicious prosecution under Michigan Compiled Laws

§ 600.2907; and (XIII) intentional infliction of emotional distress.

Presently before the Court is Defendants' October 11, 2016 motion for

partial summary judgment pursuant to Federal Rule of Civil Procedure 56, in

which they seek dismissal of all but Plaintiffs' excessive force and Plaintiff Adam

Malinowski's destruction of personal property claims against Defendant Police

Officer Robert Gadwell ("Officer Gadwell"). (ECF No. 39.) Plaintiffs filed a

response to the motion on November 8, 2016. (ECF No. 45.) Defendants filed a

---

[1] Plaintiffs stipulated to the dismissal with prejudice of the City of Detroit as a
defendant. (*See* ECF No. 52.) Thus, Count VIII of their Amended Complaint is
moot.
[2] There is no Count X in the Amended Complaint.

reply brief on November 10, 2016. (ECF No. 47.) With the Court's permission, Plaintiffs also filed a sur-reply brief, Defendants filed a supplemental brief to their motion, and Plaintiffs responded to the supplemental brief. (ECF Nos. 56, 58, 60.) The Court held a motion hearing on April 25, 2017.

At the motion hearing, Plaintiffs' counsel indicated that Plaintiffs are abandoning their conspiracy claim (Count VII) and intentional infliction of emotional distress claim (Count XIII). Counsel further stated that Plaintiffs agree to dismiss Detroit Police Officer Petroff as a defendant. For the reasons that follow, the Court is granting in part and denying in part Defendants' motion for partial summary judgment with respect to Plaintiffs' remaining claims and the remaining defendants.

## I.    Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of

an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## II.    Factual Background

On the evening of June 23, 2014, the City of Detroit conducted its annual fireworks display over the Detroit River. Mr. Richards and his friend, Plaintiff

Adam Malinowski ("Mr. Malinowski"), watched the fireworks from a location on Woodward Avenue between Jefferson Avenue and Campus Martius Park. When the fireworks display ended, Plaintiffs began walking north on Woodward Avenue with a crowd of people. Because of the crowd, Plaintiffs walked the bikes they had brought with them.

The City of Detroit Police Department was in full force the evening of the fireworks to control the crowd. This included Defendants: Assistant Police Chief Steve Dolunt ("Assistant Chief Dolunt"), Sargent Edward Brannock ("Sargent Brannock"), and Police Officers Gadwell, Michael Reizin ("Officer Reizin"), and Stephen Petroff ("Officer Petroff"). Defendants were tasked with clearing pedestrians from the closed portions of Woodward Avenue and encouraging those in attendance at the fireworks display to return to their cars and go home.

A large male with long hair, wearing a Viking hat, and swinging what appeared to be a plastic sword was among the crowd walking with Plaintiffs northbound on Woodward Avenue. The parties refer to this individual as "the Viking" and, for ease of reference, the Court will do so here. During their depositions in this lawsuit, some of the defendants described the Viking as intoxicated, belligerent, using vulgarity, and inciting the crowd by chanting such things as "f--- the police", "we're not moving" and "you can't f---ing stop us." (Pls.' Resp., Ex. 3 at 12; Ex. 6 at 20, Ex. 15 at 30-31.) Other individuals in the

5

crowd were swinging on street signs, kicking over garbage cans, jumping off flowerpots, and acting "in a semi disruptive manner". (*Id*., Ex. 6 at 15.)

Assistant Chief Dolunt approached the Viking's girlfriend and encouraged her to calm him down, but she was unsuccessful in doing so. (*Id*. at 16.) He decided to place the Viking under arrest as they reached Grand Circus Park. By that time, Officer Petroff and other police officers had joined Assistant Chief Dolunt. The officers' attempt to place the Viking under arrest resulted in a scuffle at the southern perimeter of the park (at the corner of Woodward Avenue and Witherell Street), which drew the attention of individuals within the crowd, including Plaintiffs. According to Plaintiffs, the officers were smashing the Viking's face into the ground and the Viking was asking for help and for someone to videotape the incident. (*Id*., Ex. 2 at 35, 38.) Several other officers stood a couple of feet away to create "a shield" and "block the rest of the crowd" from getting too close. (*Id*., Ex. 6 at 25.) Other officers walked northbound on Woodward Avenue to "push" the crowd in that direction. Some officers drew pepper spray and light wands and threatened to pepper spray people if they did not keep moving. (*Id*., Ex. 2 at 36-38.) The officers told the crowd to "go home" and "get out of here. Keep moving north. You can't be here." (*Id*. at 35.)

Plaintiffs passed the police officers' scuffle with the Viking and initially stopped to observe some fifteen feet away. (*Id*. at 35.) Plaintiffs then proceeded

north on Woodward Avenue for about thirty feet, where they locked their bicycles to a tree in Grand Circus Park.  (*Id*. at 37.)  Concerned about what was happening to the Viking, they decided to videotape the incident with their cellular phones. (*Id*. at 38, 39; Ex. 1 at 24-25.)  Plaintiffs therefore walked on a footpath inside Grand Circus Park back towards the location of the altercation.  (*Id*., Ex. 2 at 42, 97.)  Most of the crowd had dispersed at this point, although a "few stragglers" were standing by and observing the incident.  (*Id*., Ex. 6 at 35, 63.)

Mr. Malinowski testified during his deposition in this matter that as he began approaching the scene, officers told him to back away.  (*Id*., Ex. 1 at 32-33.)  Mr. Malinowski backed away and stopped approximately twenty to twenty five feet from the scene: "to the point where they stopped telling [him] to back away."  (*Id*. at 33-34.)  According to Mr. Malinowski, Mr. Richards was closer to the scene. (*Id*. at 34.)

Mr. Richards testified that he was on a path leading from Witherell and Woodward into Grand Circus Park recording the incident when an officer approached him, put his hand in front of the camera, and told Mr. Richards to back up and that he could not be there.  (*Id*., Ex. 2 at 49-50, 97.)  Mr. Richards told the officer that he had a right to be there and record, and he tried to stand his ground, but the officer walked into him.  (*Id*. at 49-50.)  Mr. Richards began walking backwards, away from the location of the Viking's arrest, and started to record the

scene again.  (*Id*. at 97-98; Ex. 1 at 34.)  According to Mr. Malinowski, several additional officers confronted Mr. Richards as he was backing up.  (*Id*., Ex. 1 at 38.)  At this point, Mr. Malinowski began recording Mr. Richards' confrontation with the officers.  (*Id*. at 41.)  Mr. Malinowski was at the grass or tree line of Grand Circus Park and Mr. Richards was near the patio chairs, approximately ten to eighteen feet away from Mr. Malinowski.  (*Id*. at 35, 43; Ex. 2 at 70.)

As Mr. Richards continued recording, one of the officers pushed Mr. Richards, which caused him to trip backwards over a chair and fall down.  (*Id*., Ex. 2 at 63-64.)  Mr. Richards put his phone in his pocket after he fell.  (*Id*. at 65.)  Plaintiffs testified that after Mr. Richards stood up, Officer Gadwell approached Mr. Richards and punched him in the face, knocking Mr. Richards to the ground again.  (*Id*.; Ex. 1 at 41.)

Mr. Richards called to Mr. Malinowski, asking, "did you get that on video?"  (*Id*., Ex. 2 at 68.)  Officer Gadwell then charged Mr. Malinowski, who put his phone in his pocket and started to walk away.  (*Id*., Ex. 1 at 44, 45.)  Officer Gadwell grabbed Mr. Malinowski from behind and placed him in a headlock.  (*Id*.)  Officer Gadwell then reached into Mr. Malinowski's pocket, took his phone, and slammed it against a tree.  (*Id*.)  He then pushed or shoved Mr. Malinowski against the tree, forced him to his knees, and placed him in handcuffs.  (*Id*. at 44, 48-49.)

In the meantime, an unidentified officer handcuffed Mr. Richards. (*Id.*, Ex. 2 at 68-69.)

Officers then sat Plaintiffs on a curb at the northeast corner of Woodward and Witherell. Mr. Malinowski's cellular phone was left behind in the park. According to Plaintiffs, Assistant Chief Dolunt came over and talked to them, telling them they were "f---ing idiots," "wasting their time," and taking "this right shit too seriously." (*Id.*, Ex. 2 at 73.) Plaintiffs had no interaction with Assistant Chief Dolunt prior to this point. (*Id.*, Ex. 2 at 76-77.) An unidentified officer allegedly called Plaintiffs "faggot tree huggers." (*Id.*) The officers then discussed whether to book Plaintiffs or let them go. (*Id.*, Ex. 1 at 52.) Mr. Richards testified that Assistant Chief Dolunt instructed the officers to "teach these kids a lesson" and book them. (*Id.* at 76-77.) Mr. Malinowski recalled that another officer in plainclothes said they needed to teach Plaintiffs a lesson and Assistant Chief Dolunt "listened to that." (*Id.*, Ex. 1 at 54.)

Unidentified officers then took Plaintiffs to a police vehicle for transport to the Detroit Detention Center. Mr. Malinowski asked the officer driving the vehicle what they were being arrested for and he told them "interfering." The officers then drove Plaintiffs to the Detroit Detention Center for processing. At some point after they arrived, Mr. Malinowski observed one of the Detroit Detention Center guards

holding Mr. Richards' phone and swiping through it. (Pls.' Resp., Ex. 1 at 58-59; Ex. 2 at 82.)

The next day, Plaintiffs were released. When Mr. Richards' phone was returned to him, the last video he took the preceding evening had been deleted. (Pls.' Mot., Ex. 2 at 85.)

Plaintiffs were charged with misdemeanor interference with a police officer and retained defense counsel (the same attorney representing them in this civil matter). On August 19, 2014, Mr. Malinowski entered a guilty plea to the charge. (Pls.' Resp., Ex. 13.) The trial court sentenced Mr. Malinowski to a delayed sentence to be dismissed after nine months of probation. (*Id*.) Mr. Malinowski successfully complied with the terms of the delayed sentence and the disposition was set aside on May 18, 2015. (*Id*.) Mr. Richards pleaded not guilty and the trial court dismissed the charge against him when no Detroit Police Department officer appeared at his trial on September 29, 2014. (*Id*., Ex. 12.)

Mr. Malinowski eventually recovered his cellular phone. A "hard re-set" had been done on the phone, however, which deleted all of the videos he took the evening of his arrest.

## III.  Defendants' Arguments and Analysis

### A.  Plaintiffs' State Law Claims

Defendants first argue that the Court must dismiss Plaintiffs' state law claims pursuant to the Michigan Supreme Court's decision in *Jones v. Powell*, 612 N.W.2d 423 (2000).  In that case, the Court held that where other avenues of relief are available, there is no "state law claim for damages against individuals or municipalities based on alleged violations of Michigan's constitution."  *Id*. at 426. Plaintiffs do not allege violations of the Michigan Constitution, however.  Thus, the holding in *Jones v. Powell* is not a basis for dismissal of their state law claims.

### B.  Whether the Existence of Probable Cause Defeats Plaintiffs' First Amendment Retaliation Claim and Claims Alleging False Arrest, Imprisonment, and Malicious Prosecution

Defendants maintain that there was probable cause to arrest Mr. Richards and Mr. Malinowski based on the following facts, which Defendants contend are not in dispute:

    i.    The Plaintiffs were arrested at approximately 11:15 p.m. on June 23, 2014 in Grand Circus Park.

    ii.    It was unlawful for the Plaintiffs to remain in Grand Circus Park after at [sic] 10:00 p.m. and Grand Circus Park had been closed for approximately one hour and fifteen minutes when Plaintiffs were arrested.  The Plaintiffs' presence in the park directly interfered with the officers' duties to clear the closed park and create a safe perimeter around the arrest of the Viking in Grand Circus Park.

iii.    The Plaintiffs were arrested for [i]nterference with
city employees in the performance of their duties
pursuant to Detroit City Code Section 38-2-2.

(Defs.' Br. in Supp. of Mot. at 15, ECF No. 39-1 at Pg ID 639.)  Defendants rely

on City of Detroit Ordinance Section 40-1-10 to establish that Plaintiffs' presence

in Grand Circus Park after 10:00 p.m. was unlawful.

As an initial matter, Mr. Malinowski pleaded guilty to interfering with a

government employee performing his duties even though the disposition

subsequently was set aside upon Mr. Malinowski's successful completion of his

delayed sentence.  At the motion hearing, Plaintiffs' counsel acknowledged that

this guilty plea would bar any claim by Mr. Malinowski of Fourth Amendment

unlawful arrest or malicious prosecution or a First Amendment retaliation claim

asserting that his arrest was the retaliatory act. [3]  *See, e.g., Daubenmire v. City of*

*Columbus*, 507 F.3d 383, 390 (6th Cir. 2007); *Walker v. Schaeffer*, 854 F.2d 138,

142 (6th Cir. 1988); *Shelton v. City of Taylor*, 92 F. App'x 178, 183 (6th Cir.

2004); *Marmelshtein v. City of Southfield*, No. 07-15063, 2009 WL 6468499, at

*2-3 (E.D. Mich. Mar. 11, 2009).

---

[3] In their Amended Complaint, Plaintiffs assert that Defendants retaliated against
Mr. Malinowski in violation of his First Amendment rights when Officer Gadwell
smashed Mr. Malinowski's phone against a tree and left it in the park.  (*See* Am.
Compl. ¶ 77.)  Probable cause to arrest Mr. Malinowski does not defeat this claim.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A police officer's warrantless arrest of an individual is reasonable under the Fourth Amendment where there is probable cause to believe a criminal offense has been or is being committed. *See United States v. Watson*, 423 U.S. 411, 417-424 (1976); *Brinegar v. United States*, 338 U.S. 160, 175-176 (1949). Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Brinegar*, 338 U.S. at 175. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). The officer's subjective intentions and motivations play no role in the probable-cause analysis. *Arkansas v. Sullivan*, 532 U.S. 769, 771-72 (2001); *Whren v. United States*, 517 U.S. 806, 812-13 (1996).

Furthermore, "[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Bailey v. Bd. of Cty. Comm'rs*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992). The arresting officer's "subjective reason for making the arrest need not be the criminal offense as to which the

known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). In other words, " 'when an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.' " *Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002) (brackets removed) (quoting *United States v. Saunders*, 476 F.2d 5, 7 (5th Cir. 1973)); *see also United States v. Dunavan*, 485 F.2d 201, 205 (6th Cir. 1973) ("validity of an arrest is to be judged by whether officers actually had probable cause for the arrest rather than by whether the officers gave the arrested person the right reason").

Mr. Richards was arrested for violating Detroit City Ordinance Section 38-2-2, which reads: "It shall be unlawful for any person to knowingly and willfully interfere with or obstruct any city employee in the performance of his duties as a city employee." (Pls.' Resp., Ex. 14.) Defendants argue that there also was probable cause to arrest Mr. Richards for violating Detroit City Ordinance Section 40-1-10, which reads:

> No person shall loiter, picnic, party, congregate or remain upon or within any private park, private playfield, or private playground between the hours of 10:00 p.m. and 6:00 a.m. In order for this section to be enforceable, such time shall be clearly and legibly posted upon permanent signs prominently displayed on the site of such park, playground or playfield.

(Defs.' Reply Br. at 2 n.1, ECF No. 51 at Pg ID 1091 n.1.)  Under Michigan law, a police officer, without a warrant, may arrest a person where "[a] felony, misdemeanor, *or ordinance violation* is committed … in the officer's presence." Mich. Comp. Laws § 764.15(a) (emphasis added).  Because the Court concludes that there was probable cause to arrest Mr. Richards for violating Section 40-1-10, it finds it unnecessary to decide whether probable cause existed to arrest him for interference.[4]

In response to Defendants' summary judgment motion, Plaintiffs challenged the applicability of Section 40-1-10 to Grand Circus Park.  Specifically, Plaintiffs disputed whether the closing time was posted on any sign in Grand Circus Park and pointed out that the ordinance refers to *private* parks.[5]  (Pls.' Resp. Br. at 14, ECF No. 45 at Pg ID 772.)  At the motion hearing, however, Plaintiffs' counsel conceded that Section 40-1-10 applies to Grand Circus Park.  Counsel argued,

---

[4] Moreover, as discussed further below, the Court finds genuine issues of material fact relevant to whether a reasonable officer would believe Mr. Richards violated the City's interference ordinance.

[5] Defendants presented proof of the necessary signage in their supplemental brief. (*See* ECF No. 58, Ex. N.)  At the motion hearing, Defendants' counsel also referred the Court to Detroit City Ordinance 40-1-1, which defines "parks, public places or boulevards," for purposes of Article 40 as: "*all* parks, parkways, playfields, park lots, grass plots, golf courses, playgrounds, recreation centers, athletic fields, open places, squares, lands under water and other areas which are now owned by the city or under city control *or may hereafter be acquired* by purchase, gift, devise, bequest, loan or lease."  *See, e.g.*, https://www.municode.com/library/mi/detroit/codes/code_of_ordinances?nodeId=DECO_CH40PARE (emphasis added).

however, that the officers did not arrest other citizens within the park even though they too were there past closing and that Plaintiffs were in the park because the officers had directed them in that direction while trying to clear the downtown area following the fireworks.

With respect to counsel's first argument, the fact that the officers arrested Plaintiffs who were videotaping the scuffle with the Viking and therefore exercising their First Amendment rights, as opposed to other violators of the park closing ordinance, does not negate the existence of probable cause. As stated earlier, the subjective intentions and motives of the arresting police officers are immaterial to a proper analysis of Mr. Richard's Fourth Amendment claim of false arrest and malicious prosecution. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *Scott v. United States*, 436 U.S. 128, 137-38 (1978); *McCurdy v. Montgomery Cty., Ohio*, 240 F.3d 512, 517 (6th Cir. 2001); *United States v. Ferguson*, 8 F.3d 385, 391-92 (6th Cir. 1993) (en banc). The Sixth Circuit "ha[s] held that the possibility of a discriminatory motive does not affect the inquiry into the objective reasonableness of an arrest for the purposes of the Fourth Amendment." *Stempler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997) (citing *Ferguson*, 8 F.3d at 391).

As to the second argument asserted by Plaintiffs' counsel, even if police officers were directing individuals within the crowd northbound on Woodward

Avenue and *through* Grand Circus Park, the evidence does not reflect that they were conveying to the crowd permission to stop in the park, which is what Plaintiffs had done. In this respect, this case is distinguishable from the scenario in *Garcia v. Does*, 779 F.3d 84 (2d Cir. 2014), to which Plaintiffs' counsel referred in making this argument. In *Garcia*, participants in a demonstration were arrested for disorderly conduct (i.e., blocking vehicular traffic on the Brooklyn Bridge). *Id*. at 89. The demonstrators had marched through Lower Manhattan and a bottleneck developed when they reached the bridge and tried to funnel onto the pedestrian walkway. *Id*. at 88. Initially police officers blocked the demonstrators from entering the vehicular lanes of the bridge. *Id*. at 88. The officers, however, eventually began walking onto the bridge roadway with their backs to the protestors, leading the protestors to believe that the officers wanted them to follow onto this section of the bridge. *Id*. at 89. Many protestors in fact followed the officers and eventually blocked several of the bridge's entrance ramps and traffic lanes. *Id*. Midway across the bridge, the officers stopped and announced that demonstrators on the roadway would be arrested, and they subsequently were. *Id*.

As it is undisputed that Detroit City Ordinance 40-1-10 applies to Grand Circus Park and that Plaintiffs were within the park after ten o'clock, the Court concludes that the officers had probable cause to arrest Mr. Richards. This conclusion requires the dismissal of his unlawful arrest and imprisonment claims

(Counts V and XI).  It is unclear, however, whether the Sixth Circuit has decided that lack of probable cause is an element in retaliatory arrest claims under the First Amendment.  *See Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 n.4 (6th Cir. 2011) ("The Sixth Circuit has not decided whether lack of probable cause is an element in wrongful-arrest claims after the Supreme Court's ruling in *Hartman v. Moore*, 547 U.S. 250 … (2006), which made lack of probable cause an element for claims of malicious prosecution.").  While the Sixth Circuit upheld the dismissal of a First Amendment retaliation claim based on the presence of probable cause in *Marcilis v. Twp. of Redford*, 693 F.3d 589, 604-05 (2012), the court found the claim to be "essentially a repackaged version of [the plaintiffs'] malicious prosecution claim[.]"  This court cannot conclude that Mr. Richards' First Amendment retaliation and malicious prosecution claims are the same.

A finding of probable cause to arrest Mr. Richards for violating the park closing ordinance does not negate his malicious prosecution claim for interference with a city employee.  As noted earlier, the Court finds genuine issues of material fact relevant to whether probable cause existed to arrest Mr. Richards for that violation.

### C.     Whether Valid Time, Place, and Manner Restrictions Require Dismissal of Plaintiffs' First Amendment Claims

Defendants argue that because Detroit City Ordinance Section 40-1-10 precluded Plaintiffs from remaining in Grand Circus Park after 10:00 p.m. (which

Defendants maintain is a content-neutral provision), the restriction on Plaintiffs'

exercise of their First Amendment rights within the park was lawful as a valid

time, place, and manner restriction.  (*See* Defs.' Br. in Supp. of Mot. at 22-23, ECF

No. 39-1 at Pg ID 646-47.)  As stated earlier, while Plaintiffs initially disputed the

applicability of the ordinance to Grand Circus Park, Plaintiffs' counsel conceded at

the motion hearing that the ordinance does apply to the park.

Plaintiffs allege that Defendants violated their First Amendment right to

video tape the officers' interactions with the Viking and retaliated against Plaintiffs

for exercising that right by arresting Mr. Richards and slamming Mr. Malinowski's

cellular phone against a tree and then abandoning it in the park.  The Sixth Circuit

has held that a § 1983 claim can be predicated upon a state official's retaliation

against an individual for exercising his or her First Amendment rights. *Thaddeus-X*

*v. Blatter*, 175 F.3d 378, 394–95 (6th Cir. 1999) (en banc).  To establish a First

Amendment retaliation claim, the plaintiff must establish the following elements:

> (1) the plaintiff engaged in protected conduct; (2) an
> adverse action was taken against the plaintiff that would
> deter a person of ordinary firmness from continuing to
> engage in that conduct; and (3) there is a causal
> connection between elements one and two—that is, the
> adverse action was motivated at least in part by the
> plaintiff's protected conduct.

*Id*. at 394.  Defendants' argument raises the question of whether Plaintiffs engaged

in protected conduct.

Many courts have held that there is First Amendment protection for creating audio and visual recordings of law enforcement officers in public places. *See, e.g., ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995). Defendants do not contest that this right exists. Nevertheless, free speech "whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). Such restrictions "are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Id*. Thus, "an individual's exercise of her First Amendment right to film police activity carried out in public, including a traffic stop, necessarily remains unfettered unless and until a reasonable restriction is imposed or in place." *Gericke v. Begin*, 753 F.3d 1, 8 (1st Cir. 2014); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir.), cert. denied, 531 U.S. 978 (2000) (holding that there exists "a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct"); *see also Herndon v. Lowry*, 301 U.S. 242, 259 (1937) ("The appellant had a constitutional right to address meetings and organize parties

unless in so doing he violated some prohibition of a valid statute."); *Dean v. Byerley*, 354 F.3d 540, 551 (6th Cir. 2004) ("Although the government may restrict the [First Amendment] right [to use streets for assembly and communication] through appropriate regulations, that right remains unfettered unless and until the government passes such regulations.").  As the First Circuit explained in *Gericke*, "[s]uch a restriction could take the form of a reasonable, contemporaneous order from a police officer, or a preexisting statute, ordinance, regulation, or other published restriction with a legitimate governmental purpose."  753 F.3d at 8.

Here, pursuant to Detroit City Ordinance Section 40-1-10, the City of Detroit has elected to close its private parks between 10:00 p.m. and 6:00 a.m.  As such, Plaintiffs lacked a First Amendment right to videotape the police officers while in the park after 10:00 p.m.  Therefore, they cannot demonstrate the necessary elements of their First Amendment or First Amendment Retaliation claims (Counts I and II).

### D. Whether Plaintiffs' Claims Against All Defendants But Officer Gadwell Should Be Dismissed for Lack of Personal Involvement

Defendants argue that the evidence fails to demonstrate personal involvement by any defendant aside from Officer Gadwell in any of the alleged violations of federal or state law.

Officials "sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."  *Heyerman v. Cty. of Calhoun*,

680 F.3d 642, 647 (6th Cir. 2012) (citations omitted); *see also Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (noting that personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others"). Moreover, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 675-76 (2009) (citations omitted); *see also Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). As the Sixth Circuit has explained:

> [A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays*, 668 F.2d at 874). Therefore, to prevail on a § 1983 claim, "a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676.

To establish each defendants' liability for the alleged violations, Plaintiffs assert that Defendants engaged in a civil conspiracy. The Sixth Circuit has described a civil conspiracy as:

> an agreement between two or more persons to injure
> another by unlawful action. Express agreement among all
> the conspirators is not necessary to find the existence of a
> civil conspiracy. Each conspirator need not have known
> all of the details of the illegal plan or all of the
> participants involved. All that must be shown is that there
> was a single plan, that the alleged coconspirator shared in
> the general conspiratorial objective, and that an overt act
> was committed in furtherance of the conspiracy that
> caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). Federal law prohibits

conspiracies to violate civil rights. *See* 42 U.S.C. § 1985(3). Civil conspiracy

claims "must be pled with some specificity: vague and conclusory allegations that

are unsupported by material facts are not sufficient to state a § 1983 claim."

*Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) (citing *Gutierrez v. Lynch*, 826

F.2d 1534, 1538 (6th Cir. 1987)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007).

    In their motion, Defendants contend that Plaintiffs present no evidence that a

conspiracy existed. They also argue in their reply brief that the intra-corporate

conspiracy doctrine bars Plaintiffs' conspiracy claim because the officers, in their

official capacities, act as the city itself and the city cannot conspire with itself.

(Defs.' Reply Br. at 5, ECF No. 47 at Pg ID 1020). As Plaintiffs also are suing

Defendants in their individual capacities, however, Defendants' intra-corporate

conspiracy argument does not negate Plaintiffs' assertion of a civil conspiracy.

Nevertheless, Defendants are correct that Plaintiffs present neither facts nor

inferences suggesting that there was a civil conspiracy to violate their rights.  Thus, Defendants liability depends on their personal involvement in the alleged wrongful conduct.

According to Plaintiffs, Officer Gadwell was the officer who allegedly punched Mr. Richards, slammed Mr. Malinowski's phone against a tree, and put Mr. Malinowski in a headlock, pushed him against a tree and arrested him. Plaintiffs have not identified the officer who handcuffed Mr. Richards.  Plaintiffs assert in response to Defendants' motion that Assistant Chief Dolunt and Sargent Brannock "are also liable for the seizure and imprisonment because they instructed, advised and approved of [Officer] Gadwell sending [Mr.] Richards to the Detroit Detention Center."  (Pls.' Resp. Br. at 23, ECF No. 45 at Pg ID 781.) Plaintiffs appear to base Officer Reizin's liability on his preparation of the police report, which they claim was false and led to their prosecution.

As an initial matter, the evidence reflects that Plaintiffs already were seized and the alleged excessive force against them already had been deployed by the time Sargent Brannock or Assistant Chief Dolunt became personally involved with their situation.  Plaintiffs in fact identify no facts establishing any personal wrongdoing by Sargent Brannock.  It is undisputed that Plaintiffs did not interact with Assistant Chief Dolunt before they were handcuffed and placed on the curb. (Pls.' Resp., Ex. 1 at 52; Ex. 2 at 76-77.)  The evidence reflects that Assistant

Chief Dolunt was preoccupied with arresting the Viking throughout Plaintiffs'
interaction with other officers.

Thus, at most, Assistant Chief Dolunt may be liable for Mr. Richards' claim
based on the deletion of his cellular phone video and Plaintiffs' claims alleging
malicious prosecution. As to the former, the evidence reflects that an unidentified
officer at the Detroit Detention Center rather than any defendant named in this
lawsuit deleted the video on Mr. Richards' phone. As to the latter, Plaintiffs fail to
identify how Assistant Chief Dolunt made, influenced, or participated in the
decision to prosecute Plaintiffs.[6] *See Sykes v. Anderson*, 625 F.3d 294, 308 (6th
Cir. 2010).

Plaintiffs attempt to establish Officer Reizin's liability because he authored
the incident report concerning Plaintiffs' arrest, which Plaintiffs contend contains
false information. Defendants argue that "the uncontroverted facts in this matter
make clear that as to [Mr. Richards], Det[ective] Reizin's report was based entirely
upon the representations made to him by Det[ective] Gadwell." (Defs.' Br. in

---

[6] Even if Assistant Chief Dolunt made the decision to charge Plaintiffs and this
decision could support a malicious prosecution claim, his decision was based on
information establishing probable cause supplied by other officers. Under these
circumstances, he is not liable for Plaintiffs' prosecution. *See Ahlers v. Schebil*,
188 F.3d 365, 373 (6th Cir. 1999) (citing *Lippay v. Christos*, 996 F.2d 1490, 1501
(3d Cir.1993)) ("Existing case law establishes that a police officer can only be held
liable for requesting a warrant which allegedly led to a false arrest if he "stated a
deliberate falsehood or acted with a reckless disregard for the truth. Proof of
negligence or innocent mistake is insufficient.").

Supp. of Mot. at 21, ECF No. 39-1 at Pg ID 645, capitalization removed.)  A review of the transcript from Officer Reizin's deposition in this matter suggests that this is not accurate, however.

During his deposition, Officer Reizin testified that he witnessed Officer Gadwell telling Plaintiffs to leave the vicinity of the Viking's arrest and then saw Plaintiffs turn around and walk away.  (Pls.' Resp., Ex. 8 at 9.)  Officer Reizin further testified that when Officer Gadwell turned his back on Plaintiffs and started walking to the location of the Viking's arrest, Plaintiffs likewise turned around and began returning to that area.  (*Id*. at 9-10.)  According to Officer Reizin, Plaintiffs were approximately eighteen to twenty feet away from the location of the Viking's arrest.  (*Id*. at 9.) Officer Reizin claims he then approached Plaintiffs, told them they had been asked to leave and needed to leave, they continued to argue, and so he went to arrest them.  (*Id*. at 17-18.) Officer Reizin testified that he handcuffed Mr. Malinowski, who he denied ever seeing with a phone.  (*Id*. at 18-19.)  As Plaintiffs assert, Officer Reizin also prepared the incident report that led to Plaintiffs' prosecution for interference.

These facts establish Officer Reizin's personal actions in connection with Plaintiffs' arrest and prosecution.  For the reasons already discussed, however, Plaintiffs' false arrest claims are subject to dismissal.  The viability of Plaintiffs' malicious prosecution claim is discussed *infra*.

Nevertheless, Plaintiffs do not present sufficient evidence to establish Assistant Chief Dolunt's or Officer Brannock's personal involvement in the alleged misconduct supporting their claims. These defendants, therefore, are entitled to summary judgment.

### E. Whether Any Defendant Engaged in Conduct to Support Mr. Richards' Malicious Prosecution Claims[7]

Defendants argue that the undisputed facts cannot supported Mr. Richards' malicious prosecution claims.

Malicious prosecution under the Fourth Amendment "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (citation omitted). "The 'tort of malicious prosecution' is 'entirely distinct' from that of false arrest, as the malicious-prosecution tort 'remedies detention accompanied not by absence of legal process, but by multiple institution of legal process.' " *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (emphasis removed) (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007)). A plaintiff asserting a malicious prosecution claim under § 1983 must show:

> First, … that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or

---

[7] As stated earlier, the Amended Complaint refers to Mr. Richards, only, with respect to the malicious prosecution claims. To the extent Plaintiffs intended to include Mr. Malinowski in those claims, they fail due to his guilty plea.

> participated in the decision to prosecute. … Second,
> because a § 1983 claim is premised on the violation of a
> constitutional right, the plaintiff must show that there was
> a lack of probable cause for the criminal prosecution ….
> Third, the plaintiff must show that, as a consequence of a
> legal proceeding, the plaintiff suffered a deprivation of
> liberty, as understood in our Fourth Amendment
> jurisprudence, apart from the initial seizure. … Fourth,
> the criminal proceeding must have been resolved in the
> plaintiff's favor.

*Id*. (internal quotation marks, citations, and brackets omitted). A claim of malicious prosecution under Michigan law requires proof that (1) the defendant initiated a criminal prosecution against the plaintiff, (2) the criminal proceedings terminated in the plaintiff's favor, (3) probable cause was lacking for the prosecution, and (4) "the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Matthews v. Blue Cross & Blue Shield of Mich.*, 572 N.W.2d 603, 609-10 (Mich. 1998) (citations omitted). There are genuine issues of material fact precluding summary judgment with respect to Mr. Richards' malicious prosecution claims against Officers Gadwell and Reizin.

As to the first element under § 1983 and Michigan law, Mr. Richards was charged with interference with a city employee in the performance of the employee's duties and the officers influenced or participated in the decision to prosecute by preparing an incident report stating:

28

> While at the fireworks detail on the [above] date and
> time, crew was assisting other officers with a large fight
> disturbance at Woodward and Witherall [sic]. Crew
> attempted to clear the crowd surrounding the officers
> involved. Crew asked the listed perps several times to
> step back away from the scene but they refused,
> attempting to video tape the officers and continue to
> insight [sic] the crowd. At that point, after being warned
> several times and not complying, the listed perps were
> adv[ised] and arr[ested] for interfering.

(Pls.' Resp., Ex. 9, ECF No. 45-10.) As to the second element, there are issues of

material fact relevant to whether the officers' report contains deliberately false and

misleading material information that the prosecutor would have relied on in

deciding to pursue Mr. Richards' prosecution. Most notably, viewed in a light

most favorable to Plaintiffs, the crowd had dispersed by the time Plaintiffs

approached the scene a second time and were arrested. Further, aside from

videotaping, Plaintiffs were not saying or doing anything to incite anyone. In fact,

Officer Reizin testified that by the time he arrived to the area of Woodward and

Witherell, the Viking already was handcuffed "and was sitting on his butt" and

only six or eight people (including Plaintiffs) remained in the park. (*Id*. at 7-8.)

As stated earlier, the Court also finds issues of fact precluding a finding that

there was probable cause supporting the interference charge. For one, the Viking

had been handcuffed and subdued and the crowd in the area had dispersed by the

time Mr. Malinowski and Mr. Richards were arrested. Further, according to

Plaintiffs, the officers never instructed them to leave the park; rather, they were

29

instructed only to "back up" and "get out of here." Although it is unclear from the

testimony how far back Mr. Malinowski and Mr. Richards were from the officers

forming a barricade around the location of the Viking's arrest, they had moved

away and were continuing to step back when they were arrested.

Defendants' counsel suggested at the motion hearing that police officers

have unfettered discretion to decide how far back bystanders may stand so as not to

interfere with the officers' duties. This is not an opinion this Court is willing to

accept, however. This would enable the police to screen their conduct from public

view even when unnecessary to exercise their duties safely.

Finally, aside from Mr. Richards asserting his right to record and witness the

incident, neither he nor Mr. Malinowski were saying anything to the officers or

bystanders and Mr. Richards disputes Officer Gadwell's assertion that he touched

or pushed any of the officers forming the perimeter around the Viking's arrest.

The criminal proceeding was dismissed and thereby resolved in Mr.

Richards' favor. Finally, for purposes of § 1983, as a result of the pending

criminal charges, Plaintiffs allege Mr. Richards "was subjected to supervision and

restrictions on his movements while on bond…." (Am. Compl. ¶ 94, ECF No. 32.)

Although the Sixth Circuit does not appear to have ruled on the issue, *see Johnson

v. City of Cincinnati*, 310 F.3d 484, 492 (6th Cir. 2002), several Circuits hold that

pretrial conditions of release constitute seizures for purposes of the Fourth

Amendment.  *See Gallo v. City of Philadelphia*, 161 F.3d 217, 225 (3d Cir. 1998);

*Evans v. Ball*, 168 F.3d 856, 861 (5th Cir. 1999); *Murphy v. Lynn*, 118 F.3d 938,

946 (2d Cir. 1997); *see also Albright v. Oliver*, 510 U.S. 266, 279 (1994)

(Ginsburg, J., concurring) (stating that a defendant is still seized when release from

pretrial confinement because of the conditions of his or her release).

This leaves the element of malice for purposes of supporting Mr. Richards'

state law claim for malicious prosecution.  Malice "requires evidence that the

officer 'knowingly swore to false facts … without which there is no probable

cause[.]' "  *Newman v. Twp. of Hamburg*, 773 F.3d 769, 773 (6th Cir. 2014)

(quoting *Payton v. City of Detroit*, 536 N.W.2d 233, 242 (Mich. Ct. App. 1995)).

In other words, "[i]n Michigan, 'when a party is sued for malicious prosecution, a

jury may infer malice from an absence of probable cause.' "  *Miller v. Sanilac Cty.*,

606 F.3d 240, 250 (6th Cir. 2010) (quoting *Friedman v. Dozorc*, 312 N.W.2d 585,

617 (Mich. 1981).  Thus, the questions of fact regarding probable cause extend to

malice for purposes of deciding whether Officers Gadwell and Reizin are entitled

to summary judgment.[8]

> **F.      Whether Defendants are Entitled to Qualified Immunity Under
> Michigan or Federal Law**

_____

[8] As well as to whether the officers are immune from Mr. Richards' claim under
Michigan's governmental immunity from torts statute.  *See infra*.

Defendants argue that they are entitled to qualified immunity under

Michigan Compiled Law Section 691.1407(3) and federal constitutional law.

Section 691.1407 provides immunity from tort liability to governmental agencies

and officials.  With respect to intentional torts, governmental immunity applies

where:

> (a) The acts were undertaken during the course of
> employment and the employee was acting, or reasonably
> believed that he was acting, within the scope of his
> authority,
>
> (b) The acts were undertaken in good faith, or were not
> undertaken with malice, and
>
> (c) The acts were discretionary, as opposed to ministerial.

*Odom v. Wayne Cty.*, 760 N.W.2d 217, 228 (Mich. 2008).

Under federal constitutional law, "[g]overnment officials performing

discretionary functions are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or Constitutional rights of

which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982); *see also Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 538-39 (6th

Cir. 2008).  A court makes two inquiries when deciding whether a government

official is entitled to qualified immunity: " 'First, viewing the facts in the light

most favorable to the plaintiff, has the plaintiff shown that a constitutional

violation has occurred? Second, was the right clearly established at the time of the

violation?' " *Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6th Cir. 2010) (quoting

*Phillips*, 534 F.3d at 538-39 (6th Cir. 2008)).  "These prongs need not be

considered sequentially."  *Id*.  If the court concludes that the answer is "no" to one

of the questions, it need not address the second question.  *See Jones v. Byrnes*, 585

F.3d 971, 975 (6th Cir. 2009).

     "A right is 'clearly established' if 'the contours of the right are sufficiently

clear that a reasonable official would understand that what he is doing violates that

right.' "  *Baynes v.* Cleland, 799 F.3d 600, 610 (6th Cir. 2015) (brackets omitted)

(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The relevant inquiry

is "whether it would be clear to a reasonable officer that his conduct was unlawful

in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194 (2001).  Stated

differently, "the salient question … is whether the state of the law [when the

alleged violation occurred] gave [the officials] fair warning that their alleged

treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730,

741 (2002).  This is an objective inquiry.  *Baynes*, 799 F.3d at 610-11 (citations

omitted).

     While Defendants assert that they are entitled to qualified immunity, they

seem to be asserting the defense only with respect to Plaintiffs' wrongful arrest and

imprisonment claims as these are the only claims for which they explain why

qualified immunity applies.  (*See* Defs.' Br. in Supp. of Mot. at 18-19, ECF No.

39-1 at Pg ID 642-43.) Specifically, Defendants identify the circumstances they believe render their arrest of Plaintiffs reasonable. Plaintiffs' wrongful arrest and imprisonment claims are subject to dismissal for failure to establish a constitutional violation, however. To the extent Defendants are asserting qualified immunity or immunity under Michigan Compiled Laws § 691.1407(3) with respect to Mr. Richards' surviving § 1983 and state law malicious prosecution claims, the Court believes there are issues of fact precluding a determination as to whether Officers Gadwell or Reizin are entitled to immunity.[9]

## IV.  Conclusion

To summarize, the Court concludes that the officers had probable cause to arrest Mr. Richards for remaining within Grand Circus Park after 10:00 p.m., precluding his wrongful arrest and imprisonment claims (Counts V and XI). Additionally, the ordinance constitutes a time, place, and manner restriction on Plaintiffs' free speech rights that precludes Mr. Richard's First Amendment Retaliation claim and Plaintiffs' First Amendment claim (Counts I and II).

The evidence does not show that any named defendant deleted a video from Mr. Richards' cellular phone. Therefore, the Court is granting summary judgment

---

[9] Defendants assert in a general manner that the facts fail to support a finding of malice and therefore Michigan's governmental immunity statute shields them from liability. For the reasons discussed in the preceding section, however, the Court finds genuine issues of material fact precluding the conclusion that Officers Gadwell and Reizin lacked malice.

to Defendants with respect to Count III of the Amended Complaint, but only as it pertains to Mr. Richards' rights.  Defendants do not seek summary judgment as to Mr. Malinowski's Fifth Amendment claim, to the extent it is asserted against Officer Gadwell based on the alleged damage to Mr. Malinowski's cellular phone.

Defendants also do not seek summary judgment as to Plaintiffs' excessive force claims (Counts IV and IX), to the extent they are asserted against Officer Gadwell.  There is no evidence that any other defendant used excessive against Plaintiffs.

Issues of fact preclude the Court from granting summary judgment to Officers Gadwell and Reizin on Mr. Richards' malicious prosecution claims (Counts VI and XII).

Plaintiffs are abandoning their civil conspiracy and intentional infliction of emotional distress claims (Counts VII and XIII) and agreeing to dismiss Officer Petroff.  Because Plaintiffs fail to allege facts to establish Assistant Police Chief Dolunt's or Sargent Brannock's personal involvement in the alleged violations of federal and state law, the Court also concludes that they, too, are entitled to summary judgment and these defendants are being dismissed as defendants.

Accordingly,

**IT IS ORDERED** that Defendants' motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**;

35

**IT IS FURTHER ORDERED** that Counts I, II, V, VII, XI, and XIII of

Plaintiffs' Amended Complaint are **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Defendants Assistant Police Chief Steve

Dolunt, Sargent Edward Brannock, and Police Officer Petroff are **DISMISSED**

**WITH PREJUDICE** as parties to this lawsuit.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 11, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 11, 2017, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager
